Connolly, J.
INTRODUCTION
On June 30, 1993, the plaintiff, Cumberland Farms, Inc. (“Cumberland”), brought suit against the defendant, David F. Hills d/b/a Dave’s Westwood Gulf (“Hills”), for restitution/unjust enrichment and quan- *54 turn meruit. Hills now moves for summary judgment on both of Cumberland’s claims. For the reasons discussed below, Hills’ motion for summary judgment is DENIED.
BACKGROUND
Hills leased and operated a Gulf gasoline station in Westwood, Massachusetts known as Dave’s Westwood Gulf. In 1985, when Chevron U.S.A., Inc. (“Chevron”) acquired the Gulf Oil Corporation, Gulfs franchise agreements with its franchisees, including Hills, were assigned to Chevron. On December 19, 1985, Chevron reached an agreement to sell its real property and leasehold interests in over five hundred retail Gulf gasoline service stations, including the station operated by Hills, to Cumberland. The sale was consummated on May 31, 1986. Following the closing date, all franchisees, including Hills, continued to use the Gulf trademark, operate their service stations at the same locations and purchase Gulf gasoline.
Upon the expiration of each Gulf franchise agreement assigned to Cumberland, Cumberland offered each franchisee a new franchise agreement. These franchise agreements included new monthly rental amounts. On December 8, 1986, eighteen of tibe Massachusetts dealers rejected the revised franchise terms offered by Cumberland, and filed suit in the United States District Court for the District of Massachusetts against Cumberland and Chevron (“Chestnut Hill I”) under the Petroleum Marketing Practices Act, 15 U.S.C. §2801. Shortly after the complaint was filed, the district court entered a series of “status quo” injunctions that allowed the plaintiffs to continue to operate their franchises under the terms of the old Gulf franchise agreements with Chevron, including, the rent paid for their gasoline service stations. The injunction remained in effect until the conclusion of trial. The plaintiffs were not required to post a bond in connection with the status quo injunction.
The case was tried to a jury in January and February 1989. The jury findings combined with the district court’s pretrial rulings resulted in Chevron and Cumberland being held liable under 15 U.S.C. §2802(b)(2)(E)(iii)(II) to thirteen plaintiffs, including Hills. On July 29, 1991, the United States Court of Appeals for the First Circuit reversed all judgments of the district court in favor of the plaintiffs.
In August 1991, after the Court of Appeals ruled in its favor, Cumberland offered renewal franchise packages to all former Chestnut Hill I plaintiffs, including Hills. For each franchise renewal offer, Cumberland set the monthly rent according to the same uniform formula it uses for all its Gulf franchises, and with which Cumberland had determined the renewal rates at issue in Chestnut Hill I. These franchise packages also included demands for the payment of back rent from October 13, 1988 (the date of the initial denial of summary judgment by the district court in Chestnut Hill I) through July 1991. The back rent amounts were calculated by subtracting the rent that the former plaintiffs actually paid during the rent freeze in effect during Chestnut Hill I from the amounts they would have paid under the franchise renewal agreements previously offered by Cumberland. Cumberland agreed to accept the payment of back rent on a monthly basis over an extended period of time, exclusive of interest.
Among the sixteen former plaintiffs of Chestnut Hill I, nine plaintiffs accepted the new franchise packages, five plaintiffs refused to agree to the franchise renewal terms[1] and two plaintiffs, including Hills, rejected the new franchise package and vacated their service stations.
Cumberland now brings the present suit against Hills seeking to recover one hundred thirty one thousand one hundred ninety five dollars ($131,195), the amount of back rent allegedly owed by Hills.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
In deciding the motion for summary judgment, this Court focuses on three of the arguments offered by Hills in support of his motion: (1) Cumberland has no legal right to seek restitution from Hills because no injunction bond had been required in Chestnut Hill I; (2) this Court has no jurisdiction to hear Cumberland’s claims: and (3) Cumberland’s claims are barred byres judicata.
In support of Hills’ argument that Cumberland has no legal right to seek restitution because no injunction bond was required in Chestnut Hill I, Hills quotes the *55 “no bond, no damages” rule as reading: “[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.” W.R. Grace & Co. v. Local Union 759, 103 S.Ct. 2177, 2185 n. 14 citing Russell v. Farley, 105 U.S. 433, 437 (1882); Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-68 (1976). However, this rule has been qualified to allow an action for damages when “[t]he defendant sues for malicious prosecution or on a theory of unjust enrichment.” Buddy Systems, Inc., 545 F.2d 1164, 1168 (9th Cir. 1976) (citations omitted); See also Caldwell v. Puget Sound Elec. Appren. & Train Tr., 824 F.2d 765, 767 (9th Cir. 1987). Accordingly, the “no bond, no damages” rule does not preclude Cumberland’s claims for restitution/unjust enrichment and quantum meruit.
Hills also contends this Court has no jurisdiction to entertain Cumberland’s claims. He argues that the only procedure available to Cumberland was to make a motion before the district court immediately after the decision by the Court of Appeals. This Court agrees that the district court, the tribunal which was reversed, can on motion or on its own initiative direct that restitution be made. Caldwell v. Puget Sound Elec. Appren. & Tr., 824 F.2d 765, 767 (9th Cir. 1987). However, this Court does not agree that the district court has exclusive jurisdiction over Cumberland’s claims for restitution and quantum meruit. These are common law claims which are within the purview of Massachusetts state law.
Lastly, Hills states that Cumberland’s claims are barred by res judicata since Cumberland failed to raise the issue of Hills’ liability for additional rent in Chestnut Hill I. This Court rejects this argument as the district court did when the plaintiffs in Chestnut Hill II raised a similar argument. The district court explained that Cumberland’s claim for back rent is not barred as a compulsory counterclaim, which Cumberland failed to raise in Chestnut Hill I, because Cumberland’s claim for back rent arose after it filed its answer in that action. “It is clearly established that a party need not assert a counterclaim that has not matured at the time he served his pleading . . . [and a] counterclaim acquired by a defendant after he has answered is not compulsory, even if it arises out of the same transaction as does plaintiffs claim.” Boston and Maine Corp. v. United Transp. Union, 110 F.R.D. 322, 328 (D.Mass. 1986), citing 6 C. Wright & A. Miller, Federal Practice and Procedure §1411 at 55 (1971).
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of David F. Hills d/b/a Dave’s Westwood Gulf is DENIED.

On September 30, 1991, Cumberland provided each plaintiff written notice of nonrenewal of their franchise pursuant to 15 U.S.C. §2804. In each notice, Cumberland Farms stated that the specific ground for nonrenewal was the failure of the franchisee to agree to changes or additions to the provisions of the franchise. Each notice further stated that the nonrenewal would become effective January 8, 1992.
On December 20, 1991, the five plaintiffs, who refused to agree to the franchise agreement, filed a complaint in the United States District Court for the District of Massachusetts (“Chestnut Hill II”) and moved for a preliminary injunction preventing Cumberland from failing to renew on a month-to-month basis the old Gulf franchise agreement of each plaintiff. In part, the plaintiffs argued that Cumberland had no legal right to payments of back rent because it did not make a counterclaim for such payments in Chestnut Hill I and because no injunction bond had been required in Chestnut Hill I. The district court rejected both arguments and held that the amount of restitution demanded by Cumberland, for the artificially low rents enjoyed by plaintiffs under the rent freeze, as a condition of franchise renewal did not violate 15 U.S.C. §2802(b)(3)(A).